1  LUCAS VALLEY LAW
   MARK K. de LANGIS (SBN 190083)
2  2110 Elderberry Lane
   San Rafael, California 94903
3  Telephone: (415) 472-3892
   Facsimile: (415) 472-3977
4  mdelangis@lucasvalleylaw.com

5  Attorneys for Petitioners
   AMERICAN PRESIDENT LINES, LTD. and
6  APL CO. Pte., LTD.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11                         C 07 5266

12

13 In the Matter of the Arbitration between        No.

14 AMERICAN PRESIDENT LINES, LTD., a
15 corporation, and APL CO. Pte., LTD., a          PETITION FOR ORDER CONFIRMING
   corporation,                                    AWARD OF ARBITRATOR
16
             Petitioners,                          [9 U.S.C. section 9]
17
        v.
18
19 TERRY WORLD TEXTILES, LLC, a limited
   liability company,
20
             Respondent.
21

22

23

24    Petitioners AMERICAN PRESIDENT LINES, LTD. and APL CO. Pte., LTD.

25 (collectively "APL") respectfully allege:

26

1. Petitioner American President Lines, Ltd. now is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in the City of Oakland, California.

2. Petitioner APL Co. Pte., Ltd. now is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of Singapore, registered to do business in the State of California.

3. On information and belief, respondent Terry World Textiles, LLC ('Terry World'), was at all material times mentioned herein, a limited liability company duly organized and existing under the laws of the State of Georgia.

**JURISDICTION**

4. The jurisdiction of this Court is invoked under Title 9, United States Code, and particularly Section 9 thereof, and under Title 28, United States Code, section 1333, as a case within the admiralty and maritime jurisdiction of this Court.

**BACKGROUND**

5. In or around June 2003, petitioners and respondent entered into a written maritime contract for the shipment of respondent's cargo by sea from foreign destinations (Myanmar, Pakistan, and United Arab Emirates) to the United States and Canada. (A true and correct copy of the applicable Service Contract No. EB03/0823 is attached hereto, marked Exhibit "A," and is made a part hereof.)

6. Service Contract EB03/0823 evidences a series of transactions involving international maritime commerce, as is shown by its express terms.

7. APL on the one hand, and Terry World on the other, agreed in the contract, at section 4, to resolve any dispute arising under the contract by submitting the dispute to arbitration in San Francisco, California, before an arbitrator of the American Arbitration

PETITION FOR ORDER CONFIRMING AWARD OF ARBITRATOR

1  Association. In addition, APL and Terry World agreed that the decision of the arbitrator "shall be
2  final, binding and not subject to further review." (Service Contract, at Ex. A, § 4(a), attached
3  hereto.)

4      8.    The contract, at Section 4, further provides that the decision of the arbitrator may
5  be enforced by any court, tribunal, or other forum as may properly assert jurisdiction, and that
6  the parties expressly consent and agree that the United States District Court for the Northern
7  District of California shall have personal jurisdiction over the parties to the contract. (Service
8  Contract, at Ex. A, § 4(b), attached hereto.)

9      9.    On October 7, 2004, APL invoiced Terry World the sum of $12,293.75, which
10 was then, and still is, due pursuant to the terms of Service Contract Number EB03/0823. (A true
11 and correct copy of the October 7, 2004 invoice is attached hereto as Exhibit "B," and made a part
12 hereof.)

13
14 **<u>THE ARBITRATION</u>**

15     10.    Pursuant to the arbitration agreement, as detailed in section 4 of the above-
16 described contract, APL initiated arbitration proceedings with the American Arbitration
17 Association ('AAA') on March 21, 2007.

18     11.    Following due notice to both APL and Terry World, including preliminary
19 hearings by telephone, an arbitration (via documents per the AAA rules and by order of the
20 arbitrator) was duly conducted in July 2007, before the AAA appointed arbitrator, Randall E.
21 Kay, Esq.

22     12.    On August 21, 2007, the arbitrator awarded petitioners American President Lines,
23 Ltd. and APL Co. Pte., Ltd. the principal amount of $12,293.75, attorneys' fees of $1,800 and
24 costs of $1,900, for a total award of $15,993.75. (A true and correct copy of the
25 "ARBITRATION AWARD," dated August 21, 2007, is attached hereto as Exhibit "C," and made a
26 part hereof.)

13. Terry World has failed to satisfy the arbitration award in the time since it was made. Therefore, a judgment on the arbitration award is needed to permit APL to enforce it.

14. This petition is authorized by the terms of the arbitration clause within the maritime contract, Section 9 of the Federal Arbitration Act, and the award itself.

WHEREFORE petitioners AMERICAN PRESIDENT LINES, LTD. and APL CO. Pte., LTD. pray as follows:

1. That an order of this Court be made confirming the Award of Arbitrator for the amount of $15,993.75;
2. That judgment be entered in conformity therewith, for the amount owing of $15,993.75, pursuant to the Award of Arbitrator;
3. That APL be allowed costs incurred herein;
4. The Court award APL prejudgment and post-judgment interest on all sums as provided by law; and
5. That APL be awarded such other and further relief as may be proper.

DATED: October 16, 2007

By: /s/ Mark K. de Langis
Mark K. de Langis
Attorney for Petitioner
AMERICAN PRESIDENT LINES, LTD and
APL CO. Pte., LTD.

4
PETITION FOR ORDER CONFIRMING AWARD OF ARBITRATOR

# EXHIBIT A

P

APL Service Contract EB03/0823
Amendment No. 2 - EFFECTIVE APR 15, 2004

## SERVICE CONTRACT NO. EB03/0823

ESSENTIAL TERMS PUBLICATION:       SERVICE CONTRACT TARIFF FMC NO.20
ESSENTIAL TERMS NO.                ET. NO. EB03/0823
                                   TARIFFS OF GENERAL APPLICABILITY:
                                   APL FMC NO. AP1

This Service Contract ("Contract") is made and concluded by and between APL, ("Carrier") and Merchant and each of its affiliates identified herein (each and collectively referred to herein as "Merchant"), whereby the parties mutually agree as set forth in pages attached hereto.

In the event this Contract is signed on behalf of the Merchant by an agent, the undersigned agent warrants that 1) it is authorized and empowered by the Merchant to negotiate and enter into this Contract on behalf of the Merchant, 2) it is authorized and empowered to represent and act on behalf of the Merchant in respect to all activities undertaken within the scope of this Contract or related thereto, including the booking, carriage and handling of cargo and payment of freight and other charges, and 3) all representations made in this Contract regarding the Merchant's status as a shipper are true and correct.

Carrier                                           Merchant

(Signature)  Date: 4/15/04                        (Signature)  Date: 4/15/04
Name: Patrick Leung                               Name: Shazad Naviwala
Title: Manager, EB Transpacific Pricing           Title: Import Manager

APL Co. Pte Ltd. In Its Individual Capacity and   Terry World Textiles Inc
as Agent for American President Lines Ltd.        3905 Steve Reynolds Blvd.
1111 BROADWAY                                     Suite #160
OAKLAND, CA, 94607                                Norcross, GA, 30093
                                                  Tel No: 770-823-2500
                                                  Fax No: 770-935-6681
                                                  Email Address:
                                                  Customer Number:

                                                  Affiliates of Merchant covered by this contract:
                                                  None

### Shipper Certification

Pursuant to FMC regulation 46 C.F.R. 530.6, Merchant, by execution of this Contract, certifies its status and that of all its affiliates authorized to utilize this contract as:

(1) __X__  THE OWNER OF THE CARGO
(2) _____  MEMBER OF A SHIPPERS' ASSOCIATION
(3) _____  NON-VESSEL-OPERATING COMMON CARRIER
(4) _____  OTHER (Specify: _____)

If status is #2 above, Merchant certifies that any named members in this contract who are NVOCCs are so identified and that they have tariff(s) and bond(s) on file with the FMC as required by law and regulation.

If status is #3 above, Merchant certifies that any such NVOCC's have tariff(s) and bond(s) on file with the FMC in full compliance with FMC regulations and that copies of tariff pages reflecting same have been provided to Carrier.

Applicable Boilerplate: 101,A6
Cd/Jeroen Brenters

APL Service Contract EB03/0823
Amendment No. 2 Effective April 15, 2004

## SERVICE CONTRACT NO. EB03/0823

ESSENTIAL TERMS PUBLICATION:  SERVICE CONTRACT TARIFF FMC NO.20
ESSENTIAL TERMS NO.           ET. NO. EB03/0823
                              TARIFFS OF GENERAL APPLICABILITY:
                              APL FMC NO. AP1

This Service Contract ("Contract") is made and concluded by and between APL, ("Carrier") and Merchant and each of its affiliates identified herein (each and collectively referred to herein as "Merchant"), whereby the parties mutually agree as set forth in pages attached hereto.

In the event this Contract is signed on behalf of the Merchant by an agent, the undersigned agent warrants that 1) it is authorized and empowered by the Merchant to negotiate and enter into this Contract on behalf of the Merchant, 2) it is authorized and empowered to represent and act on behalf of the Merchant in respect to all activities undertaken within the scope of this Contract or related thereto, including the booking, carriage and handling of cargo and payment of freight and other charges, and 3) all representations made in this Contract regarding the Merchant's status as a shipper are true and correct.

|  Carrier  |  Merchant  |
|---|---|
| (Signature)   Date: 4/15/04 | (Signature)   Date: 4/15/04 |
| Name: Patrick Leung | Name: Shazad Naviwala |
| Title: Manager, EB Transpacific Pricing | Title: Import Manager |
| APL Co. Pte Ltd. In Its Individual Capacity and as Agent for American President Lines Ltd. 1111 BROADWAY OAKLAND, CA, 94607 | Terry World Textiles Inc 3905 Steve Reynolds Blvd. Suite #160 Norcross, GA, 30093 Tel No: 770-923-2500 Fax No: 770-935-6881 Email Address: Customer Number: |

Affiliates of Merchant covered by this contract:
None

### Shipper Certification

Pursuant to FMC regulation 46 C.F.R. 530.6, Merchant, by execution of this Contract, certifies its status and that of all its affiliates authorized to utilize this contract as:

(1) __X__  THE OWNER OF THE CARGO
(2) _____  MEMBER OF A SHIPPERS' ASSOCIATION
(3) _____  NON-VESSEL-OPERATING COMMON CARRIER
(4) _____  OTHER (Specify:_____)

If status is #2 above, Merchant certifies that any named members in this contract who are NVOCCs are so identified and that they have tariff(s) and bond(s) on file with the FMC as required by law and regulation.

If status is #3 above, Merchant certifies that any such NVOCC's have tariff(s) and bond(s) on file with the FMC in full compliance with FMC regulations and that copies of tariff pages reflecting same have been provided to Carrier.

Applicable Boilerplate: 101.A6
Cd/Jeroen Brenters

APL Service Contract EB03/0823
Amendment No. 2 Effective April 15, 2004

SERVICE CONTRACT - SC NO. EB03/0823

Table Of Contents

Appendix A - TransPacific Eastbound................................................................................................5
Appendix B - TransPacific Westbound (reserved)
Appendix C - TransAtlantic Eastbound (reserved)
Appendix D - TransAtlantic Westbound (reserved)
Appendix E - Latin America Northbound (reserved)
Appendix F - Latin America Southbound (reserved)
Appendix G - Asia/Europe (reserved)
Appendix H - Europe/Asia (reserved)
Appendix I - Intra Asia (reserved)
Appendix J - Latin America - Eastbound, Westbound, Intra Latin (reserved)
Appendix K - Intra Europe (reserved)
Appendix Affiliates (reserved)

APL Service Contract EB03/0823
Amendment No. 2 Effective April 15, 2004

ersion April 14, 2003 101A6

## SERVICE CONTRACT

1. **APPLICATION OF CONTRACT**

   (a) This contract applies with respect to the transportation of Merchant's commodities listed in the appendix attached hereto (the "Appendix") between the origin and destination locations listed in the Appendix. This contract, its appendices and exhibits thereto, together with the terms and conditions of Carrier's bill(s) of lading and tariffs (to the extent applicable after giving effect to this Contract and exhibits referenced herein) embodies the entire understanding between the parties. There are no other agreements, understandings, conditions, warranties or representations, oral or written, express or implied, with reference to the subject matter of this Contract, which are integrated herein. No modification hereof shall be of any force or effect unless reduced to writing making reference to this Contract and executed by the parties and duly filed with the U.S. Federal Maritime Commission. In the event of any conflict among the terms and conditions of this Contract, the bill(s) of lading and the Carrier's applicable tariff(s), the order of governance shall be, first, the bill(s) of lading, second, this service contract, and third, the tariff(s).

   (b) For purposes of determining whether a shipment is made during the term of this contract, the date when the shipment is received by the Carrier or its agent shall govern. A shipment shall not be considered as "received" until the full bill of lading quantity has been received.

   (c) Merchant represents it is authorized and empowered to enter into this service contract by and on behalf of each and every affiliate identified on the attached schedule, if any, and to represent such affiliates in all matters relating to carriage of cargo tendered hereunder.

   (d) For all cargo movements hereunder from or to the People's Republic of China, Japan, Taiwan and Mexico, the term "Carrier" shall refer to American President Lines, Ltd., a Delaware USA corporation. For cargo movements from or to all other locations, the term "Carrier" shall refer to APL Co. Pte Ltd, a Singapore corporation. APL Co. Pte Ltd hereby assumes the obligations, if any, of American President Lines, Ltd. under paragraph 6 below, including the obligation to pay liquidated damages under subparagraph 6(b).

2. **EFFECTIVE DATE AND TERM**

   (a) This service contract shall become effective as of the date specified on page 1 hereof, or that date on which it is fully executed and filed with the US Federal Maritime Commission, whichever is later. It shall continue in effect until the expiration date, or lapse of the period, specified in the Appendix.

   (b) Carrier may, at any time after Merchant has met the Minimum Volume Commitment ("MVC") set forth in Appendix to the Contract, terminate this Contract, on thirty (30) calendar days written notice to Merchant.

3. **MINIMUM VOLUME COMMITMENT; DEAD FREIGHT; BOOKING**

   (a) Merchant shall tender not less than the MVC during the term hereof. Shipments shall be deemed within the scope of this contract and shall be counted toward the MVC if made by Merchant's parent, subsidiary, or other affiliated companies or entities under common control, or by an authorized agent in behalf of any such entity, all of which entities must be identified on signature page or Appendix. Merchant shall remain responsible to carrier for all obligations of non merchant parties shipping cargo under this Contract.

   (b) If Merchant fails to tender shipments in sufficient quantity to meet Merchant's undertaking as set forth in the foregoing paragraph (a), Merchant shall, within 30 calendar days of receipt of Carrier's invoice therefore, pay deadfreight in the amount of $350 for each FEU by which the Minimum Volume Commitment exceeds the volume actually tendered.

   (c) No volume shipped under this contract shall apply toward any time/revenue or time/volume requirement of any freight tariff or other service contract published by or on behalf of Carrier.

APL Service Contract FR03/0823
Amendment No. 2 Effective April 15, 2004

(d) Merchant shall book its space requirements for shipments tendered under this contract not less than 7 calendar days prior to the scheduled arrival of the Carrier's vessel at port of loading. If the shipments are offered upon less than 7 calendar days' notice, Carrier may accept such shipments, which shall then count toward the MVC or decline the shipments, at its option.

4. DISPUTES

(a) Any and all disputes arising out of or in connection with this Contract, including any failure by the Merchant to pay or by the Carrier to perform as required hereunder, shall be resolved by arbitration in San Francisco, California, or such other place as the parties to the dispute may mutually agree under the rules of the American Arbitration Association. The arbitration shall be before a single arbitrator to be appointed by the parties to the dispute or, failing such agreement and upon the application of any party to the dispute, by the American Arbitration Association. There shall be no restrictions on the nationality of the arbitrator. Except by agreement of the parties to the dispute, there shall be no prehearing discovery. The costs and expenses of the arbitration (including reasonable attorney's fees and costs) shall be borne by the non-prevailing party. The decision of the arbitrator shall be final, binding and not subject to further review.

(b) The decision of the arbitrator may be enforced by any court, tribunal or other forum as may properly assert jurisdiction. The parties hereto expressly consent and agree that the United States District Court for the Northern District of California has personal jurisdiction.

5. RATES and CHARGES

(a) Carrier shall assess the freight rates and charges set forth or referenced in the Appendix to all of the Merchant's shipments tendered under this contract.

(b) Except to the extent that the freight rates set forth in the Appendix expressly include or are not subject to other charges, all of the items contained in the Tariff(s) listed in the Appendix shall apply to and govern shipments tendered under this contract, including but not limited to: bunker fuel, currency exchange and other surcharges, and all arbitraries, storage, containerized cargo demurrage, equipment detention, and all other charges, together with all additions, deletions or modifications thereof, all Tariff rules and provisions, and all supplements thereto and reissues thereof.

(c) If at any time during the term of this service contract an increase in the applicable charges or surcharges provided in the Tariff occurs, which would otherwise apply to Merchant's shipments in the absence of this service contract, the charges or surcharges specified or incorporated by reference in the Appendix shall be increased as of the same date it becomes effective in the Tariff.

(d) If at anytime during the term of this service contract a General Rate Increase (GRI) or an increase in a specific commodity rate occurs in the Tariff, which would otherwise apply to Merchant's shipments in the absence of a service contract, then the GRI or commodity rate increase shall be added to and included in the rates and charges set forth or incorporated by reference in the Appendix, as of the same date it becomes effective in the Tariff.

6. SERVICE; CARRIER LIABILITY

(a) In consideration for Merchant's MVC, Carrier shall provide container equipment for booked shipments and shall accept each shipment timely offered by Merchant in order to meet Merchant's MVC; provided that carrier shall have no obligation with respect to cargo tendered in excess of an amount equal to 10% of the annualized MVC during any of the sequential 30 day periods covered by this Contract, the first of which commences with the effective date of the Contract. For purposes of this contract, "timely offered" shall mean shipments booked pursuant to the minimum notice provision of clause 3 (d).

(b) In the event that Carrier fails to provide container equipment, or fails to accept each shipment timely offered, within Merchant's MVC, the MVC shall be reduced by the volume tendered, except as provided in paragraph (a) above, but not carried or container equipment not supplied in order to meet

Nothing

APL Service Contract EB03/0823
Amendment No. 2 Effective April 15, 2004

Merchants MVC. Further, if Carrier fails to perform its service obligations set forth in paragraph (a) above, the parties acknowledge that Merchant may suffer commercial damages which are difficult to predict. Accordingly, the Carrier shall pay liquidated damages in the amount of US$350 per FEU by which Carrier's service failure results in carriage of less than the MVC; provided however, the MVC for the Carrier shall not be reduced by any FEU by which the Merchant's obligation to tender the MVC was reduced due to Carrier service failures.

(c) Carrier undertakes to provide the services and remedies identified in paragraph (a) and (b) above. Carrier does not undertake to perform Merchant's requirements for ocean transportation or to supply container equipment other than on a mutually agreed, space-available basis after Carrier's receipt and transportation of Merchant's MVC or during a period when no MVC is expressly provided.

(d) Except as expressly set forth in this paragraph 6, shipments under this contract shall be subject to all of the terms and conditions of Carrier's bill of lading in effect at the time of shipment and Carrier's liability for cargo loss, damage, delay, misdelivery or other breach of the contract of carriage, if any, shall be determined exclusively under the terms and conditions of the bill of lading.

7. FORCE MAJEURE

If Merchant is prevented from tendering the MVC or if Carrier is prevented from performing its service undertaking as set forth in paragraph 6 above as the result of a condition or cause beyond its control, including but not limited to, labor disputes, embargoes, casualties (whether or not the negligent acts or omissions or fault of a party contributed thereto), acts of God, civil disturbances, act or default of the other party and restraint of laws or governments, but excluding loss of market or other commercial contingencies, such failure to perform by suppliers or contractors shall be excused to that extent but no further. The party claiming excused performance shall promptly, but in any event within 7 working days, notify the other at the time of commencement and termination of an event excusing its performance, together with a statement estimating the effect of such event on its ability to perform. If an event wholly or partially preventing the performance of a party shall continue for more than 30 calendar days, either party may terminate this Contract upon delivery of written notice of termination.

8. COMPENSATION and PAYMENT of FREIGHT and CHARGES

Carrier's freight charges computed in accordance with the Appendix, demurrage, detention, surcharges, arbitraries, and all other charges applicable under the Tariff and this contract shall be paid in strict accordance with the Tariff and bill of lading before the release of the shipments on which charges accrued, or, in the case of prepaid shipments under negotiable bills of lading, before release of the original bills of lading.

9. SHIPMENT RECORDS

The shipment records required to be maintained under 46 CFR Section 530.15 shall consist of copies of Merchant's bills of lading, or computer generated bills of lading, any force majeure correspondence and notices, and any correspondence concerning Merchant's or Carrier's failure to perform which affects Merchant's entitlement to the contract rates, all of which shall be maintained by Carrier at its offices. Upon request from Carrier, Merchant shall promptly submit to the Carrier information and documents sufficient to verify the quantity and nature of cargo shipped under this contract. Shipping documents provided by Merchant governing individual shipments under this contract and all copies thereof shall bear a notation showing the service contract number of this contract. The designation by Merchant of cargo as contract cargo by affixing the contract number on the shipping documents provided by Merchant shall be made at the time of the issuance of the bill of lading and shall be conclusive.

The Merchant, and the Carrier, shall cooperate in maintaining shipment records documents and reports as they may from time to time mutually determine to be administratively desirable. The person who will respond to requests on behalf of the Carrier to make shipping records available to FMC is the Carrier's Tariff Publishing Officer, 1111 Broadway, Oakland, CA 94607, Telephone No. (510) 272-8033.

APL Service Contract EB03/0823
Amendment No. 2 Effective April 15, 2004

APPENDIX A

SERVICE CONTRACT No: EB03/0823

1. **ORIGIN:**
   MYANMAR
   AM1   PAKISTAN
   AM1   UNITED ARAB EMIRATES

2. **DESTINATION:**
   AM1   CANADA
   UNITED STATES

3. **COMMODITIES:**
   A. Textiles
   AM1   B. Towels

4. **MINIMUM VOLUME COMMITMENT:**
   50 FEU

5. **SERVICE COMMITMENTS:**
   The service commitment applicable hereto is that set forth in Paragraph 6 of this contract.

6. **CONTRACT RATES:**
Rates in USD unless otherwise noted. Rates subject to applicable arbitraries, outports and inland charges as specified in applicable tariff unless otherwise noted in paragraph 6 and 10 of this appendix.

Textiles
Myanmar (CY)

| Destination | | | D20 | D40 | D40H | D45 |
|---|---|---|---|---|---|---|
| Alpharetta, GA | DR | IPI | 2870 | 4180 | 4700 | 5290 |
| Alpharetta, GA | DR | RIPI | 2345 | 3480 | 3915 | 4405 |
| Atlanta, GA | DR | IPI | 2870 | 4180 | 4700 | 5290 |
| Atlanta, GA | DR | RIPI | 2345 | 3480 | 3915 | 4405 |
| Norcross, GA | DR | IPI | 2870 | 4180 | 4700 | 5290 |
| Norcross, GA | DR | RIPI | 2345 | 3480 | 3915 | 4405 |

AM1   Towels
Karachi, Pakistan (CY)

| | Destination | | | D20 | D40 | D40H | D45 |
|---|---|---|---|---|---|---|---|
| | Pacific Coast Ports | CY | | 1875 | 2500 | 2815 | 3165 |
| | Charleston, SC | CY | AWR | 1875 | 2500 | 2815 | 3165 |
| AM2 | Knoxville, TN (via IAX) | DR | RIPI | 2740 | 3650 | 4105 | 4620 |

AM1   Towels
Jebel Ali, UAE (CY)

| Destination | | | D20 | D40 | D40H | D45 |
|---|---|---|---|---|---|---|
| Pacific Coast Ports | CY | | 2025 | 2700 | 3040 | 3420 |
| Charleston, SC | CY | AWR | 2025 | 2700 | 3040 | 3420 |

7. **LIQUIDATED DAMAGES:**
   The liquidated damages for non-performance hereunder are set forth in Paragraphs 3 (b) and 6 (b) of this contract.

8. **EXPIRATION DATE OR PERIOD OF TERM:**

APL Service Contract EB03/0823
Amendment No. 2 Effective April 15, 2004

Commencement:     Jun 24, 2003
Effective through:   Apr 30, 2004

## 9. SIGNATURE
See Signature Page

## 10. ASSESSORIALS
a) The contract rates set out in paragraph 6 are inclusive of the following extra charges where applicable:
AM1 - 1. Destination Delivery Charge(DDC)

| | Origin | Mode | Commodity | Destination | Mode | Currency | D20 | D40 | D40H | D45 |
|---|---|---|---|---|---|---|---|---|---|---|
| AM1 | *West Asia/Middle East | CY | All | *Atlantic/Gulf Coast/Group 3 | CY | US$ | 535 | 1070 | 1205 | 1355 |
| AM1 | *West Asia/Middle East | CY | All | *Canada | CY | US$ | 220 | 440 | 495 | 555 |
| AM1 | *West Asia/Middle East | CY | All | *Pacific Coast/Group 1, 2, 4 | CY | US$ | 370 | 740 | 835 | 935 |

b) The contract rates set out in paragraph 6 are not subject to the following extra charges where applicable:
AM1 - 1. Chassis Charge(CHS)

AM1 - 2. Port Surcharge(PSC)

| Origin | Mode |
|---|---|
| Pakistan | CY |

AM1 - 3. Suez Transit Fee(SUZ)

AM1 - 4. Terminal Handling Origin(THC)

| Origin | Mode |
|---|---|
| Pakistan | CY |

c) The following extra charges shall apply during the term of this contract:
1. Destination Delivery Charge(DDC)

| | Origin | Mode | Commodity | Destination | Mode | Currency | D20 | D40 | D40H | D45 |
|---|---|---|---|---|---|---|---|---|---|---|
| AM1 | *North/South Asia | CY | All | *Atlantic/Gulf Coast/Group 3 | CY | US$ | 535 | 1070 | 1205 | 1355 |
| AM1 | *North/South Asia | CY | All | *Canada | CY | US$ | 220 | 440 | 495 | 555 |
| AM1 | *North/South Asia | CY | All | *Pacific Coast/Group 1, 2, 4 | CY | US$ | 370 | 740 | 835 | 935 |

All other charges not listed above shall apply pursuant to Paragraph 5 (b) of this contract.

## 101 BOILER PLATE
101.A6 applies

## AM1 - 108 CARGO FREE TIME AND DEMURRAGE
As an exception to Rule 22 of AP1, cargo free time at Charleston, SC, will be 10 calendar days.
(For USA and Canada destinations, this clause applies only to CY Delivery cargoes.)

# EXHIBIT B

# INVOICE

AMERICAN PRESIDENT LINES, LTD.

| | | INVOICE | | COGMD3K494 |
|---|---|---|---|---|
| Customer # | Currency | Invoice Description | Invoice Date | Revenue Acct#/C C |
| COGTERRYWO | US$ | DEAD FREIGHT | 10/7/2004 | 33202140 |
| | | | | 9771999 |

TERRY WORLD TEXTILES INC.
3905 STEVE REYNOLDS BLVD., STE. 160
NORCROSS, GA. 30093
ATTN: ACCOUNTS PAYABLE

Please reference our invoice number and make check payable to:
AMERICAN PRESIDENT LINES, LTD
116 INVERNESS DR. EAST, STE 400
ENGLEWOOD, CO 80112

ATTN: FREIGHT CASHIER

| Description | Unit Count | Unit Price | Amount |
|---|---|---|---|
| Service Contract No          EB03/0823 | | | |
| MQC:                                          50 | | | |
| FEUs Shipped:                          14.875 | | | |
| FEUs Short:                             35.125 | 35.125 | $350.00 | $12,293.75 |
| Dead Freight per FEU:           350.00 | | | |
| | | | |
| Amount Due    $     12,293.75 | | | |
| PAYMENT DUE UPON RECEIPT | | Invoice Total  $ | 12,293.75 |

PAYMENT DUE UPON RECEIPT

Invoice Number: COGMD3K494

| Customer # | Customer Name | Rec. Type | Invoice Date | Amount Due |
|---|---|---|---|---|
| COGTERRYWO | TERRY WORLD TEXTILES INC. | RDFT | 10/7/2004 | $   12,293.75 |

Make checks payable and remit to:
AMERICAN PRESIDENT LINES, LTD
116 INVERNESS DR. EAST, STE 400
ENGLEWOOD, CO 80112

ATTN: FREIGHT CASHIER

# EXHIBIT C

AMERICAN ARBITRATION ASSOCIATION

COMMERCIAL ARBITRATION TRIBUNAL

IN THE MATTER OF THE ARBITRATION
BETWEEN

AMERICAN PRESIDENT LINES, LTD. and )    RE: 74 125 E 00300 07 JEPE
APL CO. PTE., LTD.,

            ARBITRATION AWARD

    Claimants,

v.

TERRY WORLD TEXTILES, INC. also
known as TERRY WORLD EXPORTS,

    Respondent.

I, the undersigned sole arbitrator, having been designated in accordance with the arbitration agreement entered into between the above-named Parties, and having been duly sworn and having duly heard the proofs and allegations of the Parties, do hereby FIND as follows:

This controversy was submitted to arbitration by the parties pursuant to a Service Contract No. EB03/0823 entered into between the parties on or about June 24, 2003 and subsequently amended and re-executed on or about April 15, 2004, providing for arbitration in accordance with the rules of the American Arbitration Association (the "Association"). The Service Contract is in the name of TERRY WORLD TEXTILES, INC., which is apparently also known as TERRY WORLD EXPORTS.

This matter was heard as an expedited case on the submission of written documents. A briefing schedule was established by the First Preliminary Hearing Order dated June 29,

Case no. 74 125 E 00300 07 JEPE

2007. Respondent did not submit any opposition to the claim, and the hearing was declared closed as of August 8, 2007.

## AWARD

I hereby Award as follows:

1. Respondent TERRY WORLD TEXTILES, INC. also known as TERRY WORLD EXPORTS shall pay to Claimants AMERICAN PRESIDENT LINES, LTD. and APL CO., PTE., LTD. the sum of Twelve Thousand Two Hundred Ninety Three Dollars and Seventy Five Cents ($12,293.75);

2. The administrative filing and case service fees of the American Arbitration Association, totaling $950.00, shall be borne entirely by Respondent. The fees and expenses of the arbitrator, totaling $950.00, shall be borne entirely by Respondent.

Therefore, Respondent shall reimburse Claimants the additional sum of One Thousand Nine Hundred Dollars and Zero Cents ($1,900.00), representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant; and

3. Respondent shall also pay to Claimants the sum of One Thousand Eight Hundred Dollars ($1,800.00) as and for reasonable attorneys fees incurred by Claimants.

This Award is in full settlement of all claims submitted to this arbitration.

Dated: August 21, 2007

Arbitrator Randall E. Kay, Esq.